**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Gyorgy Nyari,                                                    Civil No. 07-1583 (DWF/AJB)

          Petitioner,

v.                                                                                    **ORDER**

Michael Chertoff, Secretary, U.S. Department
of Homeland Security; Michael B. Mukasey[1],
United States Attorney General;
Emilio Gonzales, Director, U.S. Citizenship
& Immigration Services; Denise Frazier,
District Director, U.S. Citizenship
& Immigration Services, and United States
Citizenship & Immigration Services,

          Respondents.

---

David L. Wilson, Esq., Wilson Law Group, counsel for Petitioner.

D. Gerald Wilhelm, Assistant United States Attorney, United States Attorney's Office, counsel for Respondents.

---

**INTRODUCTION**

Petitioner Gyorgy Nyari initiated this suit seeking *de novo* review of his naturalization petition. The parties have filed cross-motions for summary judgment. In his motion, Nyari seeks an order granting his petition for naturalization, while Respondents seek an order dismissing Nyari's action and denying his naturalization

---

[1] Michael B. Mukasey has been appointed to serve as Unites States Attorney General and is hereby substituted as Defendant pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

petition. For the reasons stated below, the Court denies Nyari's motion and grants Respondents' motion.

## DISCUSSION

On March 20, 2007, Nyari filed a Petition for Rehearing of Naturalization Application. In the Petition, Nyari seeks a *de novo* review of his application for naturalization and a determination without an evidentiary hearing. Both parties have moved for summary judgment. Nyari submits that he meets the qualifications for naturalization as a matter of law and seeks an order granting his petition for naturalization. Respondents, on the other hand, argue that the Court should grant summary judgment dismissing Nyari's application for naturalization and effectively require Nyari to submit a new application.

### I.     Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Findings of Fact

In 1983, Nyari immigrated to the United States from Hungary as a political refugee. He has been a lawful permanent resident of the United States since September 20, 1983. (AR 184.) Nyari was married with two daughters at the time he became a permanent resident. Nyari and his wife divorced in 1984, but Nyari moved back in with his wife and daughters in 1985. Nyari and his family later moved to Virginia Beach, Virginia.

In November 1988, Child Protective Services ("CPS") of the Virginia Beach Department of Social Services began an investigation into the welfare of Nyari's children.[2] In January 1989, CPS sent a letter to Nyari indicating that it had reached a disposition; the disposition was "Founded on Sexual Abuse and [Nyari was] listed as the Abuser in the State Child Abuse and Neglect Registry." (AR 79.) Both of Nyari's

---

[2]     Around the same time, Nyari was charged with assault with respect to an incident involving his former spouse. The State of Virginia dismissed the assault charge. (AR 127.)

3

daughters were listed as victims. Nyari was informed of his right to appeal. Nyari availed himself to the first level of appeal. After an appeal conference, the disposition was upheld. (AR 81.) Nyari again appealed and was informed that he would be able to present evidence and/or testimony at the appeal hearing. Nyari failed to appear at the appeal hearing. Based on that failure, his appeal was considered abandoned and the disposition of "Founded sexual abuse" was upheld. (AR 85-86.)[3] There are no specific CPS findings in the record. Therefore, the Court is unaware of the specific nature or extent of the charges.[4] No criminal charges were brought against Nyari with respect to the child abuse allegations. In 1992, Nyari was awarded custody of his older daughter by the Virginia Beach Juvenile and Domestic Relations District Court. (AR 71.) The custody order contained certain conditions, including that his daughter "will have a room and a bed of her own . . . [that] there will be no sexual contact by petitioner . . . and [that there will be] no nudity in her presence." (AR 71.)

Nyari first applied for citizenship on January 11, 1989. During an interview, he was "confronted with the evidence of record attesting to the fact that he had been listed on State Child Abuse and Neglect Registry" and was advised that the INS would have to recommend that his application be denied. (AR 216.) Nyari withdrew his application.

---

[3] Nyari denies that he abused his children and contends that their initial statements were forced and untrue.

[4] The investigation report containing CPS's basis for it disposition of "Founded on Sexual Abuse" would have been introduced at the hearing of Nyari's appeal. In addition, Nyari was notified of his right to request a copy of the report. There is no evidence that Nyari requested a copy and, presumably because Nyari did not appear at the hearing, the report is not part of the present record.

Nyari applied for citizenship a second time in September of 1995.  In connection with this application, Nyari was asked to furnish certain evidence, including evidence establishing that he was not registered in the State of Virginia on the State Child Abuse and Neglect Registry.  (AR 165.)  Nyari refused to produce this information, explaining: "I am not able nor willing to comply with your requests on your instruction sheet because they are violating the American Constitution."  (AR 134, 165.)  Nyari's application was denied.  (AR 164-166.)

Nyari again applied for citizenship on March 18, 2003.  On October 21, 2003, the Department of Justice, Immigration and Naturalization Service ("INS") requested additional information with respect to Nyari's petition of naturalization.  This information included:  (1) certified copies of "the court disposition"; (2) "certified copies of the charging document (police report), sentencing document, and where applicable, documents that show you have complied with all the conditions of Nyari's sentence/diversion program/probation"; and (3) "a copy of the Virginia state guidelines regarding the Abuse and Neglect Registry and whether or not [Nyari is] still on the registry [and if so] how long [he will] be on it and what needs to occur to be taken off the registry."  (AR 78.)  In a letter dated October 29, 2003, and in response to a request from Nyari, the City of Virginia Beach Department of Social Services ("DSS") provided the INS with copies of several letters, including the Administrative Ruling indicating that Nyari had abandoned his appeal for failure to appear.  (AR 76.)  The DSS also indicated that "[t]here were no police reports since the allegations did not include rape, etc." (*Id*.)

On April 20, 2005, the United States Citizenship and Immigration Services ("CIS")[5] found that Nyari was ineligible for naturalization because he failed to establish "good moral character" because he was listed on the Virginia Department of Social Services Child Abuse Registry until October 2007. (AR 46.) The CIS denied Nyari's application. Nyari appealed that denial through the administrative process. In a letter dated July 27, 2005, the CIS requested that Nyari provide the following information:

> Law pertaining to registering in the Virginia registry; Letter from the court showing no arrest; Confirmation from state of MN that your are not subject to registration; Letter from Virginia stating what restrictions, if any, being registered on the State Registry has upon your freedom.

(AR 45.) In response, Nyari submitted a certified Record of No Conviction from Virginia Beach, Virginia; verification from the State of Minnesota showing that he is not an offender in Minnesota; confirmation from the State of Virginia Offender website showing that Nyari is not found within the search criteria in the State of Virginia Sex Offenders; and copies of Virginia statutes regarding the Virginia central registry for child abuse and neglect and the consequences of being on a child abuse registry. On December 1, 2006, and after a *de novo* hearing on the matter, the CIS sustained the original determination and stated:

> Your failure to comply with this Service's request for additional information must be construed as a request for a decision to be made on the record. . . . By failing to provide the requested documentation, you have failed to establish your eligibility for the benefit that you are seeking. As you are still listed on the Virginia Department of Social Services Child Abuse Registry, and you have failed to submit evidence that you are not required to register in Minnesota, the Service has insufficient information

---

[5] The INS was divided into the Bureau of Immigration and Customs Enforcement and the CIS. *See, e.g.*, *Brown v. Ashcroft*, 360 F.3d 346, 348 n.1 (2d Cir. 2004).

to make a favorable determination in regards to your eligibility for naturalization.

(AR 4.)

### III. Conclusions of Law

The parties agree that the Court reviews *de novo* Nyari's application for naturalization. *See* 8 U.S.C. § 1421(c). An applicant for naturalization bears the burden of establishing eligibility for citizenship in every respect. *Berenyi v. INS*, 385 U.S. 630, 637 (1967). *See also* 8 C.F.R. § 316.10(a)(1) ("an applicant for naturalization bears the burden of demonstrating . . . good moral character"). Any doubts are to be resolved in favor of the United States. *Berenyi*, 385 U.S. at 637. Section 1427(a) of Title 8 provides:

> No person . . . shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years . . . , (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) *during all the periods referred to in this subsection has been and still is a person of good moral character*, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

8 U.S.C. § 1427(a) (emphasis added).

The sole issue before the Court is whether Nyari has established the "good moral character" requirement for naturalization. There are certain classes of applicants who are automatically precluded from a finding of good moral character. 8 U.S.C. § 1101(f); 8 C.F.R. § 316.10(b)(1). Nyari does not fall into one of these classes. However, the fact that he is not within one of the enumerated classes "shall not preclude a finding that for other reasons [he] is or was not of good moral character." 8 U.S.C. § 1101(f)(8).

7

Determinations of good moral character are made on a case-by-case basis in accordance with the "generally accepted moral conventions current at the time." *Repouille v. United States*, 165 F.2d 152, 153 (2d Cir. 1947). *See also* 8 C.F.R. § 316.10(a)(2) ("[T]he Service shall evaluate claims of good moral character on a case-by-case basis taking into account the elements enumerated in this section and the standards of the average citizen in the community of residence."). The statutory period during which good moral character is to be assessed is five years immediately preceding the date of filing his application up to the time of admission to citizenship. 8 U.S.C. § 1427(a)(1) and (2); 8 C.F.R. § 316.10(a)(1) and (2). However, the Court can consider pre-regulatory conduct insofar as it bears on an applicant's moral character within the specified period. In particular:

> The Service is not limited to reviewing the applicant's conduct during the five years immediately preceding the filing of the application, but may take into consideration, as a basis for its determination, the applicant's conduct and acts at any time prior to that period, if the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character.

8 C.F.R. § 316.10(a)(2).

Respondents argue that "Nyari's refusal to provide information on constitutional grounds, plus his failure to appear at proceedings intended to review his status as a sex offender in Virginia, taken together with the belated and unexamined recantations of Nyari's alleged victims, plus the standards established by the Code of Federal Regulations combine to demonstrate that Nyari's application for citizenship should be denied." (Defs.' Mem. in Supp. of Mot. for Summ. J. at 10.) Nyari, on the other hand,

8

argues that he meets the qualifications for naturalization as a matter of law. In particular, Nyari submits that the presence of his name on the Virginia Department of Social Services Child Abuse Registry is an insufficient basis to deny his application for naturalization.

The Court first notes Respondents' inconsistent and careless use of the terms "sex offender" and "sex-offender registry." Nyari was placed on the Virginia Child Protective Services Central Registry (the "central registry"). The central registry is a name index of persons involved in founded complaints of child abuse and neglect that is maintained by the Virginia Department of Social Services. *See* Va. Code. §§ 63.2-1514, 63.2-1515. This registry is separate and distinct from Virginia's Sex Offender and Crimes Against Minors Registry, which generally requires individuals to register if they have been convicted or adjudicated of certain criminal offenses. *See generally* Va. Code § 9.1-901, § 19.2-390.1. Similarly, Minn. Stat. § 243.166, subd.1b, defines persons who must register as a "predatory offender" in the State of Minnesota. This statute pertains generally to persons who have been convicted of or adjudicated delinquent for certain qualifying offenses. There is no dispute that Nyari was never charged with or convicted of any actual crime. Therefore, there has not been a showing that Nyari would be required to register as an "offender" under either Minn. Stat. § 243.166 or Va. Code § 19.1-901.

The Court also takes issue with Respondents' request that Nyari provide "evidence that [Nyari] is not required to register in Minnesota." (AR 4.) Though requesting "evidence," the information sought from Nyari is not factual in nature. Instead, it

9

requires legal analysis of a state statute.  It also requires that Nyari prove a negative.  It seems to the Court that the CIS should be familiar with the requirements for registering as an offender in Minnesota.  If after review of a petitioner's application, the CIS believes that a petitioner is required to register as an "offender" in Minnesota, it should frame the issue more specifically.  Further, as explained above, there has been no showing, and the record does not support a finding, that Nyari is required to register under Minn. Stat. § 243.166.

Nonetheless, the Court finds that Nyari has not met his burden of establishing good moral character.  There is no dispute that Nyari was listed on the State of Virginia's Child Abuse and Neglect Registry at the time he applied for naturalization.  The Court acknowledges that the underlying facts and circumstances on which the Virginia agency's determination was made are not known.  The Court is concerned that the record does not contain any findings of fact with respect to the determination of "Founded on Sexual Abuse."  However, the record indicates that Nyari was given the opportunity to request a copy of the investigation record and was aware that the record would have been introduced if he appeared for his hearing on his appeal in 1989.  That the facts and circumstances underlying the Virginia agency's determination are now unavailable is in large part due to Nyari's inaction.  Moreover, the Court views Nyari's failure to pursue his own appeal of the "Founded on Sexual Abuse" determination as the equivalent of a "no contest."  Nyari had the opportunity to contest the factual allegations made against him, but for whatever reason chose not to.  There is no evidence in the record that Nyari sought to vacate the determination or to be removed from the central registry until almost

ten years after the agency's determination. Thus, the only information before the Court demonstrates that Nyari failed to contest an agency disposition "founded on sexual abuse." Nyari's delayed protestations of innocence and the subsequent recantations by Nyari's daughters carry little weight considering Nyari's initial failure to contest the determination. For these reasons, the Court determines that Nyari has failed to meet his burden to demonstrate his good moral character.

## CONCLUSION

Having conducted a *de novo* review of the record in this matter, the Court finds that Nyari's application for naturalization should be denied. Accordingly, **IT IS HEREBY ORDERED** that:

1. Nyari's Motion for Summary Judgment (Doc. No. 11) is **DENIED**.

2. Respondents' Motion for Summary Judgment (Doc. No. 19) is **GRANTED.**

3. Nyari's Petition for Rehearing of Naturalization Application is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated:  January 18, 2008                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            Judge of United States District Court